**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK D. COLLINS | : | |
| | : | |
| Appellant | : | No. 2385 EDA 2019 |

Appeal from the PCRA Order Entered August 9, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004480-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK D. COLLINS | : | |
| | : | |
| Appellant | : | No. 2386 EDA 2019 |

Appeal from the PCRA Order Entered August 9, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004481-2010

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    Filed: May 6 ,2021

Malik D. Collins appeals from the order,[1] entered in the Court of

Common Pleas of Philadelphia County, dismissing his petition filed pursuant

---

[1] Collins has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which requires the filing of "separate appeals from an order that resolves issues arising on more than one docket." **Id.** at 977. **See also Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (en
*(Footnote Continued Next Page)*

to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Upon

review, we affirm.

The Honorable M. Theresa Sarmina summarized the facts of this case as

follows:

> On May 18, 2006, just before 11 p.m., Johnny Harmon (victim Harmon) and Latoya Bostic (victim Bostic) were shot multiple times while sitting inside of victim Harmon's truck on the 1200 block of Dover Street in Philadelphia. During the time period of 2006, victim Harmon and his best friend[,] whom he had known for 20 years, Nathaniel Dowling, were selling PCP together on the 1200 block of Dover Street. Neither of them was affiliated with anyone else that was dealing drugs either on that block or on neighboring blocks. It was during this time period that Dowling and victim Harmon were having problems with neighboring drug dealers on "Thompson and Hollywood[,]" which is a "block over" from where Dowling and victim Harmon sold their drugs. [Collins] and his co-defendant and cousin, Anthony Collins (Anthony), were part of the group of individuals who were known to be present on the Hollywood Street corner and were known to sell drugs there. One week prior to the shooting, while Dowling was wrapping up his drug dealing for the night, two [men] had come over to him and told him to get on the ground and shot at Dowling as he, instead, ran away. Dowling observed these two individuals run towards Hollywood Street.

> Dowling recalled that, on the day of the murders, he had stopped his car in front of a bar at 30th and Stiles Streets and saw Antoine Collins, [co-defendant] Anthony's brother, standing outside. As Dowling drove off[,] he saw Antoine make a phone call and, a short time later, victim Harmon was shot. After leaving the bar, Dowling drove to the 1200 block of Dover Street to meet up with victim Harmon. The two friends were planning on going out to a club that night. Dowling parked his vehicle on the corner of Thompson and Dover Streets and walked back to the 1200 block

banc) (revisiting **Walker** holding) and **Commonwealth v. Larkin**, 235 A.3d 350 (Pa. Super. 2020) (en banc) (same). We have consolidated Collins' appeals *sua sponte*. **See** Pa.R.A.P. 513 (where there is more than one appeal from same order, Court may order them to be argued together).

of Dover Street, where he encountered victim Harmon and victim Bostic, both of whom were sitting in victim Harmon's truck. Victim Harmon and Dowling spoke for about five minutes, after which victim Harmon indicated that he was going to finish speaking with victim Bostic and then go to the club with Dowling. Dowling left victim Harmon and walked over to 1250 Dover Street[,] where Harmon's niece, Deborah Stackhouse, lived.

Moments after Dowling walked into the 1250 Dover Street residence, he heard numerous gunshots. Dowling got down on the floor and, when the gunshots stopped, he got up, looked out the window, and saw somebody run in front of the window, stop, and backtrack. Dowling identified the person at the window as [Collins]—a person whom he had known all his life. Dowling ran out the front door and saw that [Collins] had a gun in his hand and was running with a second person, whom he recognized as [co-defendant] Anthony. Dowling ran to his truck to get his gun and ran towards Stiles Street, towards which he had seen [Collins] and Anthony running.

After the gunshots, Ms. Stackhouse had run up to the second floor of her residence and looked out the window; she saw victim Harmon's truck but did not see him moving. She also saw Dowling run to his truck and retrieve a gun. Unable to find [Collins] and Anthony, Dowling ran to victim Harmon's truck and saw that his friend had a gunshot wound to the head. As a police car came up Stiles Street, Dowling ran back to 1250 Dover Street to put his gun inside the residence.

Shortly before the shooting, Elise Hinton, second cousin of the two defendants, saw [Collins] and Anthony walking around 29th and Thompson Streets and saw [Collins] carrying a gun in his hand. They were headed in the direction of Dover Street. Moments after they had walked by her, Ms. Hinton heard gunshots, but did not see anyone do the shooting.

Nine 9mm fired cartridge casings (FCCs) and three 40 caliber FCCs were recovered from the scene of the shooting. The three 40 caliber FCCs were determined to have been fired from the same firearm[,] although the firearm was never recovered. The 9mm firearm did turn up more than three months later when a search warrant was executed, in an unrelated case, on August 25, 2006, at the location of 1209 Windrim Street in Philadelphia. Through a cross-check, the ballistics expert was able to determine that the 9mm FCCs [from this case] were all fired from the weapon seized

during the execution of that search warrant. The individual inside the 1209 Windrim Street residence at the time the search warrant was executed was identified as Emery Hicks. He was also known as ["]Gutterman["]. A photograph of Gutterman was identified at trial by defense witness Antoine Collins . . . as someone he knew.

On August 24, 2011, following a jury trial in which he was tried with his co-conspirator, co-defendant, and cousin, Anthony [], [Collins,] was found guilty of two counts of murder of the first degree (H-1), criminal conspiracy (F-1), and possessing instruments of crime (PIC) (M-1). On August 30, 2011, [the] court sentenced [Collins] to consecutive life sentences for each murder conviction, a concurrent 20[-]to[-]40 year sentence for the conspiracy conviction, and a concurrent 2½[-]to[-]5 year sentence for the PIC conviction. On September 6, 2011, [Collins] appealed. [Collins' judgment of] sentence was affirmed on July 22, 2013, and our Supreme Court denied [allowance of appeal] on February 6, 2014.

Pa.R.Crim.P. 907 Notice, 7/12/19, at 1-4 (citations to record and unnecessary capitalization omitted).

Collins filed the instant, timely, *pro se* PCRA petition on February 28, 2014. On April 24, 2018, the petition was assigned to the PCRA court, which immediately appointed PCRA counsel.[2] After counsel failed to file an amended petition or **Turner**/**Finley**[3] "no-merit" letter by the court's deadline, the court removed him and appointed new counsel, George Yacoubian, Esquire, on December 3, 2018. On February 5, 2019, Attorney Yacoubian filed a **Turner**/**Finley** "no merit" letter. On February 8, 2019, the PCRA court

_____

[2] The PCRA court indicated that Collins' petition had "fall[en] through the cracks" between the date it was filed and the date it was assigned to the court for review. **See** Pa.R.Crim.P. 907 Notice, 7/12/19, at 4.

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

- 4 -

continued the matter until May 24, 2019 for "court evaluation." *Id.* at 5. After Collins contacted the court to complain that Attorney Yacoubian had failed to address certain of his claims in the ***Turner***/***Finley*** letter, the court brought the matters to counsel's attention and granted counsel a 60-day extension to "further investigate and develop" one of those claims. *Id.* Counsel submitted a supplemental ***Turner***/***Finley*** letter on July 5, 2019 and, after conducting an independent review of the record, concluded that Collins was entitled to no relief. Accordingly, the PCRA court issued its Rule 907 notice of intent to dismiss on July 21, 2019. On August 7, 2019, Collins filed a response to the court's Rule 907 notice. The court dismissed his petition on August 9, 2019, and this timely appeal follows.[4] Collins raises one issue for our review:

> Did the PCRA court err in dismissing [Collins'] PCRA petition without a hearing when prior counsel were ineffective for failing to preserve and argue a weight of the evidence issue and [Collins] suffered prejudice as a result?

---

[4] This Court has previously held that, where PCRA counsel has been permitted to withdraw pursuant to ***Turner***/***Finley***, appointment of collateral appellate counsel is unnecessary and improper. ***See Commonwealth v. Maple***, 559 A.2d 953 (Pa. Super. 1989). Although PCRA counsel was permitted to withdraw in the court below, Judge Sarmina—for reasons not evident from the record—ordered that new counsel be appointed to represent Collins following PCRA counsel's withdrawal. Matthew F. Sullivan, Esquire, was appointed to represent Collins, but subsequently filed an application with this Court to withdraw, on the basis that Collins was not entitled to counsel following PCRA counsel's withdrawal pursuant to ***Turner***/***Finley***. This Court granted Attorney Sullivan's application by order dated January 27, 2020. Thereafter, on August 17, 2020, a letter of appointment from the Court of Common Pleas of Philadelphia County was entered on this Court's docket, appointing Stephen T. O'Hanlon, Esquire, as counsel for Collins. Attorney O'Hanlon has submitted a brief on Collins' behalf.

Brief of Appellant, at 4 (unnecessary capitalization omitted).

Our standard of review is well-settled. In reviewing the denial of PCRA relief, "this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Andrews*, 158 A.3d 1260, 1263 (Pa. Super. 2017). In rendering our decision, we are bound by the credibility determinations of the PCRA court that are supported by the record. *Commonwealth v. Keaton*, 82 A.3d 419, 425 (Pa. 2013). We must view the record in the light most favorable to the Commonwealth as prevailing party. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014).

Collins' claim asserts the ineffectiveness of his trial and PCRA[5] counsel. Where ineffective assistance of counsel is pled, counsel is presumed effective and the petitioner bears the burden of proving ineffectiveness. *Commonwealth v. Cooper*, 941 A.2d 655 (Pa. 2007). In order to obtain relief, a petitioner must prove that counsel's representation was deficient, and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, a petitioner must plead and prove, by a preponderance of the evidence, that

---

[5] Collins asserts that trial counsel was ineffective for failing to file a post-sentence motion and that subsequent counsel was ineffective for failing to assert trial counsel's ineffectiveness for failing to do so. Collins preserved this claim by stating at sentencing that he wished for counsel to file a post-sentence motion, including the claim in his *pro se* PCRA petition, and raising it in his response to the PCRA court's Rule 907 notice. *See* Pa.R.A.P. 302.

(1) the underlying claim has arguable merit; (2) counsel's actions lacked any reasonable basis, and (3) counsel's actions prejudiced the petitioner. Counsel's actions will not be found to have lacked a reasonable basis unless the petitioner establishes that an alternative not chosen by counsel offered a potential for success substantially greater than the course actually pursued. Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different.

*Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citation omitted).

Here, Collins argues that all prior counsel were ineffective for not preserving and/or arguing a claim that the verdict was against the weight of the evidence. Collins argues that "[t]here was no physical evidence tying [him] to the killings[,] and identifications placing [him] at the scene of the killings were dubious and based upon various duplicitous motives." Brief of Appellant, at 16. Because Collins cannot establish that there is a reasonable probability that the outcome of the proceedings would have been different, he is entitled to no relief. ***See id.***

We apply the following standard of review to a challenge that a verdict is against the weight of the evidence:

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that

the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Here, the PCRA court reviewed Collins' weight claim and concluded that "the Commonwealth presented a compelling case that [Collins] and his co-defendant . . . shot and murdered the two victims in this case" and that, accordingly, his claim that prior counsel were ineffective for failing to preserve or raise the claim fails. In addition, this Court reviewed Collins' co-defendant's weight-of-the-evidence claim on direct appeal and concluded that it was without merit. *See Commonwealth v. Anthony Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013). In doing so, we noted the following:

Our Supreme Court has commented that "[g]iven the primary role of the jury in determining questions of credibility and evidentiary

weight, this . . . extraordinary power vested in trial judges to upset a jury verdict on grounds of evidentiary weight is very narrowly circumscribed." ***Criswell v. King***, [] 834 A.2d 505, 513 ([Pa.] 2003). In the instant case, we see no grounds to upset the determinations of the jury. While the Commonwealth's evidence was circumstantial, it supported guilty verdicts on each crime charged. [Anthony] Collins vigorously challenged the credibility of the Commonwealth's witnesses, but he did not present independent exculpatory evidence that would contradict the verdict[,] nor did he so undermine the Commonwealth's evidence as to render it completely unbelievable. Therefore, the trial court did not abuse its discretion in determining that the verdicts were not so contrary to the evidence as to shock the conscience, and this claim also fails on all three convictions. [***Commonwealth v.***] ***Champney***, 832 A.2d [403,] 408 [(Pa. 2003)].

***Id.***

As the Commonwealth aptly points out in its brief, the evidence

presented against Collins was the same as that presented against his co-

defendant and,

[i]f anything, the evidence of [Collins'] guilt was stronger than that of the co-defendant['s]. Elise Hinton actually saw a gun in [Collins'] hand just before the shooting occurred; with respect to the co-defendant, she did not see him in possession of a gun, but merely stated that he had his hand at his waist as though he was carrying one. Nathaniel Dowling, the other eyewitness, had a better view of [Collins] than he did of the co-defendant, because he was able to see [Collins'] face when he, unlike the co-defendant, briefly stopped in front of the window Dowling was looking out of. Additionally, like the co-defendant[,] as this Court observed in its published opinion in that appeal, [Collins] did not present any exculpatory evidence at trial or undermine the Commonwealth's evidence of his guilt such that it was unreasonable for the jurors to rely on it in reaching their verdict.

Brief of Appellee, at 15-16.

We agree with both the PCRA court and the Commonwealth. It was the

sole province of the jury to assess the credibility of the witnesses' testimony,

and we can discern no abuse of discretion in the PCRA court's conclusion that the verdict was not against the weight of the evidence. As Collins' underlying weight claim lacks merit, his counsel cannot be deemed ineffective for failing to properly preserve it or raise it on direct appeal or in PCRA proceedings. *See Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (failure to prove any prong of ineffectiveness test defeats claim). Accordingly, the PCRA court did not err in denying relief.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/21